MoIlvaine, J.
In the pleadings are found many charges and counter-charges of bad faith and violations of duty in regard to the joint management and use of this railroad, such, no doubt, as would authorize a court of equity to interfere between the parties and control their conduct, to the end that the property might be preserved, the rights of the respective owners enforced and the public welfare secured; but as these charges and counter-charges are all denied, and no proof offered in respect thereto, and especially as it is agreed that the disputes and difficulties which have arisen in the joint management of the property have become the subject of litigation between the parties in other courts, we have considered this case solely with reference to the right of the plaintiff as a co-tenant, to demand partition of the common property ; which indeed is the prime object in prosecuting the action.
The railroad sought to be aparted, as agreed, “is in the main a single track railroad,” and was, originally, the sole property of the Central Ohio Railroad Company. But on the 31st of August, 1861,. an undivided half interest in the property was *626 conveyed to the Steubenville and Indiana Railroad Company, under authority of an act of the general assembly of the state of Ohio entitled, “ An Act to provide for the adjustment of the affairs of insolvent railroad companies, and for their reorganization without a sale of the property thereof,” passed April 7, 1863. This statute provides, that in case judicial proceedings are or may be pending in any of the courts sitting, or which may sit, in said state, for the sale of any railroad, and the same is in the hands of a receiver or receivers appointed by such court; and in case the railroad involved in such judicial proceedings may be used in whole or in part by said company in common with any other railroad company on the same track between the points on the line common to both, and within the limits of termini established by the charters of both companies, it shall be lawful for the company owning the said railroad, if the same can be done without impairing the usefulness thereof to the company owning the same, to lease for a period of years, for an annual rentage, or to sell for a fixed sum to the said railroad company to which the said line of road in whole or in part is common, an undivided interest in the same upon such terms and conditions as may be agreed upon; such lease or sale to be reported to and approved by said court.
The parties and the property being within the statute, a sale of an undivided half interest in the line of road between Newark and Columbus was made, and approved by the court having jurisdiction in the matter, and upon its order a deed of conveyance was executed to the Steubenville and Indiana Railroad Company, thus creating an estate in common between the parties to the transaction, to which common estate the parties to this suit have succeeded under authority of statutory provisions. The common estate thus created, however, is held by the owners for the sole use of maintaining and operating a railroad, as a public highway, without any power in either or both the owners to sell the same or any part thereof.
Of this estate the plaintiff demands partition, and to that end invokes the power of the court under the statute, if the case falls within the statute, and if not, then by virtue of its equitable jurisdiction in partition.
*627 The partition statute provides, “ Tenants in common, and coparceners, of any estate in lands, tenements, or hereditaments within the state, may be compelled to make or suffer partition thereof in the manner hereinafter prescribed.” Sec. 5754, Rev. Stats. It is also provided, that if the court in which an action for partition is pending, shall find that the plaintiff has a legal right to any part of the estate, it shall order partition thereof and appoint three disinterested and judicious freeholders of the vicinity to be commissioners to make the partition. Sec. 5757, R. S. And it is further provided that if the commissioners be of opinion that the estate cannot be divided without manifest injury to the value thereof, they shall return that fact to the court, with a just valuation4 of the estate. Sec. 5762. And further, that if no election be made by any of the parties to take the estate at its appraised value, then the court, at the instance of a party, may order the sale of the estate at public auction. Section 5764.
Independent of the statute, the right of a co-tenant to have partition does not depend upon the fact that a division of the property will not injuriously affect the value thereof; but under the statute, actual partition cannot be made where it appears, in the opinion of the commissioners, that manifest injury would result from such division.
It is claimed on the part of the defendant that under this rule, the property in controversy could not be aparted between the owners. But conceding this to be so, it is claimed, on the other hand, that a case then arises under the statute for the sale of the property.
While it must be admitted that the power of sale extends to all cases in partition under the statute, wherein actual division of the estate would manifestly injure the value thereof; it must also be admitted that the existence of the power to sell in such cases, does not enlarge the right of partition given by the statute to cases which would not be within it, if the power to sell did not exist. Hence, the question arises, is the partition of such railroad within the purview of the statute? In the solution of this question the effects and consequences of a sale may be considered. The general policy of the state has *628 been to withhold from railroad companies the power to sell their roads. True, a general power to mortgage has been given, and as a consequence ■ a sale on foreclosure maybe made. Such consequence must have been contemplated by the legislature; but it does not follow that a partition or sale on proceedings in partition of a railroad, was contemplated when authority was given to create a tenancy in common in such property. On the other hand, as it has been the policy of the state to perpetuate the ownership in severalty of a railroad without power of alienation, it is more reasonable, that, when a tenancy in common in such property was permitted, the intention was a perpetual ownership in common, especially as the power of alienation was withheld from the tenants in common.
Again, as the chief value of such property consists in its use as a public highway, and as it is the interest of the public that each tenant in common should maintain its highway from terminus to terminus, as well over the common right of way as beyond it, we cannot believe, that the legislature contemplated or intended, by permitting such joint ownership and use, to provide thereby a means for the destruction of both or either of the roads, in whole or in part, owned and operated by the parties, by a partition or a sale in partition proceedings, under the statute regulating partitions, passed many years before this species of property had an existence.
Surely this is no ordinary estate in common or coparcenary, either as to the subject matter or manner of holding.
But it is claimed that, independent of the statute, the plaintiff is entitled to have partition in equity, where, ms at common law, the right to demand actual division is acknowledged to be absolute and inseparable from an estate in common, coparcenary or joint tenancy, without regard to the fact whether the division of the estate will prove advantageous or ruinous to the co tenants. The question, however, is still open to inquiry, whether the estate in controversy is within that rule.
It must be recollected, as above stated, that the case, as presented to us, involves no equitable consideration, other than *629 the mere right of co-tenants to have partition of the common property, so that each may hold his own interest in severalty.
The difficulty in the case mainly arises from the fact that the public has an interest in the use to which the property is perpetually devoted, and no one will deny that equity will recognize and protect the public interest, and to that end will consider the state of legislation on the subject.
We concede that a railroad company is a private corporation, invested with private rights, among which is the right to own and operate its railroad. Nevertheless, its duty is to manage and operate its road in the transportation of passengers and freight, for the use and benefit of the general public. To enable it to perform that duty, it is invested with the power of eminent domain, whereby private property may be taken and devoted to the public use. It is also authorized to purchase property necessary and convenient for the construction and maintenance of the highway; and property thus obtained is as much devoted to public use, as that condemned in the exercise of the power of eminent domain. All its powers and duties are prescribed by statutory law. As well its power to dispose of, as to acquire property. Neither of the parties to this suit has power to sell and convey, for any purpose, its interest in the subject matter of the suit. They have no power to make partition between themselves, for this would involve the power to make mutual releases and conveyances. Hence, we come to this question, Will equity compel partition between co-tenants, sui juris, who have no power to partition their common property amicably ? Partition is completed in equity by mutual releases. Will equity decree mutual releases between the parties, where, by law, the power to execute them is withheld from the parties ? We can find no precedent of the kind. In partition between infants, the execution of releases is postponed, by the decree, until the majority of the co-tenants. In Freeman on Co-tenancy and Partition, it is said, “ Rut courts of equity never professed to act directly on the title. Their decrees operated i/n¡personam only. A decree of partition did not purport to invest the parties with titles to their several allotments. The final action of a court of equity *630 in reference to a partition, was based upon the hypothesis that it was just and equitable that a certain allotment should be made between the parties. The court, therefore, directed that the parties should do that which it had determined they ought to do; in other words, that they should make partition between one another, by executing mutual conveyances. Without such conveyances, the legal title to the property remained unaffected. A partition in chancery, like a voluntary partition made by the parties, must be consummated by mutual conveyances. Therefore, no effectual partition can be had in equity against any person not competent to execute a conveyance.” Section 427.
Assuming that in states where power to sell is given in cases of statutory partition, if actual partition would injure the property, a court of equity, in like cases, would follow the analogy of the statute, and modify the form of its remedy, still, the subject matter of its jurisdiction would not be enlarged ; and we understand it to be a fundamental principle in the doctrine of partition, that partition cannot be demanded as a matter of right, either under the statute or in equity, if the co-tenants are excluded from the power to make voluntary partition of the subject matter, from considerations of public policy or by positive law.
This brings us to consider the force and effect of the statute of April 7, 1863, under the authority of which, the tenancy in common now sought to be severed, was established. This statute, when construed in the light of other legislation in pari materia, we think excludes the parties before us from the power of making voluntary partition between themselves by mutual releases, and consequently from the right to compel partition under the statute or in equity.
The section of road now sought to be partitioned, at the date of the passage of this act, was owned and operated by the Central Ohio Railroad Company as a part of its line of road, extending from .Bellaire to Columbus, via Newark. At the same time, the Steubenville and Indiana Railroad Company owned and operated a road from Steubenville to Newark, with power under its charter to extend its line of road to Columbus. *631 The statute authorized the sale of an undivided interest in the road between Newark and Columbus, by the Central Ohio Company to the Steubenville and Indiana Company, “ if the same could be done without impairing the usefulness thereof” to the Central Ohio Company. This condition was unquestionably inserted in the statute upon considerations of public policy. In the deed of conveyance it was recited that the sale did not impair the usefulness of the section to the vendor company. It was not meant, either by the statute or the deed, that the exclusive use of the section was preserved to the Central Company; but that, in the joint use of the section reasonable facilities were and would be afforded the Central Company for conducting its business over this line of the road. In other words, that one half of the capacity of the road was sufficient to supply the necessities of the vendor company. We do not understand that any implication arises that the Central Company should be entitled to the use of the road to the full extent of the requirements of its traffic, however great its volume might become; but we do understand it to be implied that the one half of the capacity of the road was and should be subservient to the uses of the vendor; and that the vendee acquired no right, in any way, to deprive the vendor thereof. It was the use of an undivided road, not the half of the road when divided, that was thus secured to the vendor; and this, not for a time limited at the pleasure of the purchaser, but for all time. This is inferable from the fact that no further power to alienate existed in either party; save such only as might result from the power to create debts.
Our conclusion, therefore, is, that the provisions of this statute, when considered in connection with the fact that power of alienation was withheld from these co-tenants, is inconsistent with the absolute right to demand or compel partition, whereby the usefulness of a part of this section of the road to the successor of the Central Ohio Railroad Company would undeniably be impaired. The legislature did not contemplate or intend that a partition of this property should be made; but, on the other hand, did intend a perpetual joint use of the highway.

Petition dismissed.